J-S01035-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: N.B.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: P.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1198 WDA 2025 |

Appeal from the Order Entered August 20, 2025
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  024 of 2025

| | | |
|---|---|---|
| IN RE: ADOPTION OF: D.T.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  P.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1199 WDA 2025 |

Appeal from the Order Entered August 20, 2025
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  025 of 2025

BEFORE:   BOWES, J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED: JULY 15, 2026**

The present matter, in which P.G. (Mother) appeals from the August 20, 2025, orders that involuntarily terminated her parental rights to her biological sons, five-year-old N.B.P. and twenty-one-month-old D.T.P. (collectively, "Children"), returns to this Court upon the orphans' court's post-remand

_____

[*] Former Justice specially assigned to the Superior Court.

completion of a 23 Pa.C.S.A. § 2511(b) analysis evaluating the bond, if any, between Mother and each child and whether termination of Mother's parental rights is in children's best interests.[1]  With the aid of the orphans' court's complete Section 2511(a) and (b) analyses explaining and supporting its order for the involuntary termination of Mother's and Father's parental rights, we have reviewed the record and affirm on the basis of the opinion authored by the Honorable Jim Silvis.

In our prior memorandum decision remanding and retaining panel jurisdiction, we set forth the facts and procedural history relevant to Mother's appeal and discussed fully the evidence admitted at the Termination of Parental Rights Hearing, such that we incorporate our prior memorandum by reference.  We turn, then, to the single issue Mother raises for our consideration:

> Did the Trial Court err when it terminated the parental rights of the Appellant pursuant to the Adoption Act and specifically 23 Pa.C.S. Section 2511?

_____

[1] We observed in our prior memorandum decision that the orphans' court twice scheduled a formal bonding/attachment assessment between the parents and children, and parents failed to show on both occasions.  The record, however, contained other evidence, including expert testimony, of a loving bond or attachment between Mother and elder child N.B.P., albeit an insecure one because Mother had failed to nurture and consistently offer it due to her dependency on methamphetamine and amphetamine.  Therefore, we remanded to the orphans' court "to conduct the requisite needs and welfare analysis under Section 2511(b), with particular reference to both the child-biological parent bond and the child-current foster parent bond, before reaching the decision of whether to terminate parent's parental rights." ***Adoption of N.B.P.***, --- A.3d ----, 2026 WL 775748 (Pa. Super. filed Mar. 19, 2026);

Brief of Mother, at 19.

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (cleaned up).

The Adoption Act governs the involuntary termination of parental rights through a statutory scheme at 23 Pa.C.S.A. § 2511 requiring orphans' courts to apply a bifurcated analysis, beginning with a focus on Section § 2511(a)(1)-

- 3 -

(11), which present the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830. If the orphans' court determines the petitioner has established, by clear and convincing evidence, grounds for termination under one of these subsections, it must then assess the petition pursuant to Section 2511(b), which requires an orphans' court to "give primary consideration to the developmental, physical, and emotional needs and welfare of the child." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). A child's emotional needs and welfare include intangibles such as love, comfort, security, and stability. *Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023).

"[I]f the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task." *K.T.*, 296 A.3d at 1105-06. This Court has acknowledged our high court's directive that a Section 2511(b) inquiry must include consideration for the bond between the parent and the child. *In re Adoption of A.G.R.*, (non-precedential decision) 351 A.3d 196 at **8, No. 563 MDA 2025, 2025 WL 3089947 (Pa. Super. filed November 5, 2025)[2];. *See also Interest of R.F.*, 345 A.3d 283, 289 (Pa. Super. 2025) (vacating termination decree and remanding where orphans' court failed to address both the testimonial evidence indicating that a parent-child bond may exist between the mother and R.F. and the effect that termination would have on him). Furthermore,

---

[2] *See* Pa.R.A.P. 126(b) (providing that unpublished nonprecedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

"orphans' courts 'must consider whether the Children are in a pre-adoptive home and whether they have a bond with their foster parents.'" ***Interest of K.T.***, 296 A.3d at 1106 (internal citation omitted).

Mother's counseled brief concedes that the Agency established by clear and convincing evidence grounds of parental conduct warranting termination enumerated under Section 2511(a)(2), (5), and (6).[3]  She recounts that of

---

[3] 23 Pa.C.S.A. § 2511 provides, in relevant part:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(6) In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child.

23 Pa.C.S.A. § 2511(a)(2), (5), & (6).

the Agency's 64 attempts to conduct court-ordered drug screening of Mother, 59 of them were unsuccessful (with 11 outright refusals), and the five completed tests were all positive for methamphetamine. Brief of Mother at 19-20. She acknowledges, as well, that "[v]arious other services were put in place by the Agency; however, Mother (along with Father) did not cooperate with services to any great extent." Brief of Mother, at 20.[4]

Instead, Mother focused her challenge on Section 2511(b) by offering her demonstrated affection for the children when she attended schedule visits:[5]

> Mother's strongest asset was her desire and willingness to visit with the children. Further, NP enjoyed his visits with Mother. However, Mother's lack of consistency with services as well as with the prescheduled visits led to a finding of aggravated circumstances as Mother by Order of Court dated June 25, 2025. Specifically, the Court found that Mother had failed to maintain substantial and continuing contact with the child for a period of six months.
>
> While the children were in agency custody the minimum of the 15 prior 22 months, provision of additional time to Mother may have facilitated her ability to be more consistent in he her visitation and possibly with the other services requested by the Agency.

---

[4] Mother concedes that Children remained in the custody of the Agency for 20 months. In 2023, Mother and Father were offered twenty (20) supervised visits with Children but attended only seven (7). In 2024, Mother attended eighteen (18) of the forty-five (45) visits offered. In 2025, Mother attended two (2) of the fifty-six (56) visits offered. Her counseled brief acknowledges that the Agency offered her a bus pass to assist her in attending her scheduled visits, but she did not accept this service.

[5] At the outset, we note that Mother's failure to respond to two attempts to schedule a formal bonding assessment, on April 14, 2025, and April 22, 2025, frustrated the Agency's ability to conduct a formal assessment.

Therefore, the conclusion is that the trial court did in fact err by refusing or failing to provide additional time to Mother to facilitate possible reunification with her children.

Mother's Brief, at 20-21.

The orphans' court responds in its post-remand Pa.R.A.P. 1925(a) opinion that testimonial evidence from both psychologist, Carol Patterson, and family therapist, Dr. Christine Mahady, bore on the best interests of the child inquiry, including the parent-child bond at stake, and guided the court to its determination. In this regard, the orphans' court has supplemented its initial Rule 1925(a) opinion a complete discussion of the bonding evidence as it pertains to both children and offers its Section 2511(b) determination that while it may be in the best interests of the children to permit continued parent-child contact in a controlled supervised setting, it is also in their best interests to terminate biological parents' parental rights so that foster parents, in whose care children are thriving, may proceed with filing petitions for adoption pursuant to instructions provided in the orphans' court's April 21, 2026 order terminating parental rights.[6]

We discern no error with the orphans' court's order and opinion as it relates to the bond between biological parents—Mother in this case—and children, the bond between foster parents and children, and the comparative analysis of the bonds that favors termination of parental rights that would

---

[6] Notably, the orphans' court views favorably foster parents' willingness to allow children to continue supervised contact with biological parents. *See* TCO, at 22.

allow adoption by foster parents, who have been mindful not to sever the children's familial connections, as described above. Accordingly, we affirm the order below.

Order Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/15/2026